**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **SOPHY TREADWAY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 2:19-cv-00244** |
| | § | |
| **SOPHEAK OTERO,** | § | |
| **MATTHEW OTERO, and** | § | |
| **EXXIZZ FOODS, INC., d/b/a** | § | |
| **ROCKPORT DONUTS** | § | |
| | § | |
| **Defendants.** | § | |

**STATEMENT OF FEES**
**RELATED TO SANCTIONS ORDER, DE 170**

Per the Court's order (DE 170), attached is defense counsel's Affidavit and related evidence concerning Defendants' fees expended in responding to the Plaintiff's Motion for Leave to Supplement Expert Designation, DE 163, and defending against its appeal, DE 169. The total amount of fees that were reasonable and necessary and are sought in connection with this issue is $6,896.25. The explanation of this fee amount is in the attached Affidavit and exhibits noted in it.

DATED: December 21, 2020        Respectfully submitted,


/s/ Andrea M. Johnson
Andrea M. Johnson
Texas State Bar No. 10679600
Federal Bar No. 1285
KANE RUSSELL COLEMAN LOGAN PC
5051 Westheimer Road, Suite 1000
Houston, Texas 77056
Phone: (713) 425-7433
Fax: (713) 425-7700
Email: ajohnson@krcl.com
**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**OF COUNSEL FOR DEFENDANTS:**
Emily Green
State Bar of Texas No. 24106027
Demetri J. Economou
State Bar of Texas No. 24078461
KANE RUSSELL COLEMAN LOGAN PC
5051 Westheimer Road, Suite 1000
Houston, Texas 77056
Tel: (713) 425-7400
Fax: (713) 425-7700
Email: deconomou@krcl.com
Email: egreen@krcl.com

## CERTIFICATE OF SERVICE

I certify that on December 21, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Andrea M. Johnson
Andrea M. Johnson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SOPHY TREADWAY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil No. 2:19-cv-00244 |
| | § | |
| EXXIZZ FOODS, INC., d/b/a | § | |
| ROCKPORT DONUTS and | § | |
| MATTHEW OTERO and | § | |
| SOPHEAK OTERO | § | |
| | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF ANDREA M. JOHNSON REGARDING ATTORNEYS' FEES

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned notary public, on this day personally appeared ANDREA M. JOHNSON, known to me to be the person as stated above, and who after being duly sworn upon her oath deposes and states as follows:

1. "My name is Andrea M. Johnson. I am the attorney-in-charge for the Defendants, Exxizz Foods, Inc. ('Exxizz Foods'), and Sopheak Otero and Matthew Otero (the 'Oteros'), collectively, the 'Defendants,' in the above styled case. I am authorized to make this Affidavit on the Defendants' behalf. I am over 18 years of age, and I am fully competent in all respects to make this Affidavit. I have never been convicted of a felony or crime of moral turpitude. All statements herein are true and correct and within my personal knowledge.

2. "I make this Affidavit as a part of the Court's requirement (DE 170) that an affidavit be filed 'setting out [Defendants'] attorney's fees, expenses, and costs incurred with respect to defending against [Plaintiff's] motion for leave [to supplement her expert designation (DE 163)] and any preparatory work for defending against [Plaintiff's] appeal to the District Court of the Magistrate's decision (DE 169). *See* the Court's order, DE 170. As a preliminary matter and given the timing of the District Court's decision on the appeal, I note that there were scant fees associated with Plaintiff's appeal (DE 169), and they are not discussed in (or sought by) this Affidavit (as they mostly dealt with transmittal of the Court's order). This Affidavit focuses solely on the fees associated with defense of the Motion for Leave to Supplement (DE 163) ('Motion'); that defense 'Response' is filed as DE 166.

1

3. "I am an attorney with the law firm of Kane Russell Coleman Logan, PC (the 'Firm' or 'KRCL'), which has offices at 5051 Westheimer Road, Houston, Texas 77056. My title is 'Director,' which is how my firm refers to partners. I am the principal attorney for Defendants in the above-styled-and-numbered case.

4. "I attended law school at Loyola Law School in Los Angeles, California, and graduated in 1981; my 1978 undergraduate degree was from the University of California, Los Angeles ('UCLA'). I was a Phi Beta Kappa, magna cum laude graduate from UCLA, with an honors degree in History. In law school, I was elected to the St. Thomas More Honor Society (which was similar to the Order of the Coif in other law schools), I was a research assistant to a civil procedure professor, and I was an editor on the law review board for the Loyola Law Review.

5. "In late August 1981, I came to Texas to clerk for federal judge, the late, Hon. Hugh Gibson, Jr., who was assigned to the Galveston Division of the Southern District of Texas. I worked for Judge Gibson for two years.

6. "I have passed both the California and the Texas Bar exams, in 1981 (California) and in 1984 (Texas).

7. "After completing my two-year clerkship with Judge Gibson, I remained in Texas and went into private practice, working for civil law firms in the Houston, Texas area, including Holtzman & Urquhart, Powers & Frost, and Burleson LLP. I also had a private solo practice for four and a half (4.5) years under the name of Andrea M. Johnson, P.C. As noted, I am currently affiliated with Kane Russell Coleman Logan PC, which is a firm with offices in Dallas and Houston.

8. "I have over 37 years of experience in private civil practice, plus, as noted, two years as a federal court law clerk. In these years of practice, I have been either an owner (of my own firm) or a partner of every firm of which I have been a member.

9. "During the 37-plus years of my practice, my work has generally been in the civil litigation area and has included not only employment issues, but also, at times, some general contract/commercial issues, along with some real estate/fraud/environmental concerns, and some personal injury/alleged product failure allegations, both locally and nationally.

10. "Since about 1993, my practice has focused on employment law, representing almost exclusively employers (managers and supervisors), providing transactional/day-to-day advice as to various employment issues, and I have assisted employers in numerous litigation-related matters. These matters have included court disputes in every federal district court in Texas as to every facet of employment law; responding to and interacting with various governmental agencies in Texas and elsewhere, including, without limitation, the Equal

2

Employment Opportunity Commission, the United States Department of Labor, and the Texas Workforce Commission; representing clients in arbitrations in several states across the continental United States, as related to various discrimination issues; and some appellate work in the State of Texas and before the Fifth Circuit Court of Appeals. My bio is attached, Exhibit A.

11. "Since 1984, as noted, I have been licensed to practice law in the State of Texas, and I am currently a member in good standing in all the federal district courts of Texas, including the Southern District, in which I have been a member in good standing since 1984. I practice law in many counties of Texas, including Harris County and Nueces County, and, given my employment law practice, I am very familiar with litigation rules and practices in all the Texas federal courts. I am currently handling several matters in federal court in Corpus Christi, including the matter referenced in the style of this Affidavit.

12. "My practice and experience have included work in all facets of employment law, including, without limitation, every statute protecting employees from discrimination and all statutes dealing with minimum wage and overtime (such as the Fair Labor Standards Act, the 'FLSA'). I have represented employers in all kinds of employment-related litigation, arbitration, and federal and state agency action, whether the allegations have involved single or multiple plaintiffs or class action claims.

13. "In addition to being a member of the Texas Bar and of the Fifth Circuit Bar, I am also a Texas *SuperLawyer* in Employment Law, from 2008 to present, a *Top Lawyer* in Texas in both Commercial and Employment law, and a *Best Lawyer* in the United States (*U.S. News & World Report*) in Employment Law, for three consecutive years—among other accomplishments. In the Texas Bar, I have been a member, on the board, and the Chair of the Texas Women in the Law Section. Also, I regularly speak on employment law issues for various Bar programs here in Texas and elsewhere, and I often provide private training for clients as to a myriad of employment issues. Finally, I have been on the board of several schools and nonprofits.

14. "This case is currently being handled on an hourly basis by Kane Russell Coleman Logan PC, with me as the principal defense lawyer. The matter came to our office as an overtime lawsuit, Civil Action No. 2:18-CV-259, and my firm, through me and others that work with me, has also represented the Defendants in a related overtime matter, Civil Action No.2:19-cv-132, and in the referenced matter, which has allegations of human trafficking and forced labor, Civil Action No. 2:19-cv-00244. All these cases are related. The engagement letter that started this attorney-client relationship notes the hourly rates and is attached (it is redacted for attorney-client privileged matters). *See* Exhibit B.

15. "Given the fact that this matter was and is being handled on an hourly basis, each attorney is required to keep accurate records as to their hours worked and

all expenses incurred in the prosecution and collection of this matter. I am familiar with the average, customary and reasonable hourly rates charged by attorneys with my experience and expertise in the geographical area of Harris and Nueces Counties, Texas. While this matter is being litigated in Nueces County, the counsel for both the plaintiff's side and the defense side are from Harris County.

16. "The agreed-upon rate in this case for my services is $400 per hour (Ex. B); the rate for Emily Green who assisted me in research and writing is $275 per hour. We were the primary attorneys that worked on the Response to the Motion for Leave to Supplement Designation of Experts. However, these rates are discounted from the Firm's standard rates; for example, my standard rate is $475 an hour and Mrs. Green's standard rate is $325 an hour. Ms. Green's bio is attached as Exhibit C.

17. "On December 10, 2020, U.S. District Judge, Nelva Gonzales Ramos, entered an order affirming the Magistrate Judge's Order Striking Plaintiff's Expert, DE 168, and advising that sanctions would be entered against Plaintiff's counsel, DE 170 at 3-4. Judge Ramos ordered Defendants' counsel to file an affidavit concerning defense fees by December 21, 2020 (DE 170). This Affidavit responds to that Order.

18. "The defense work incurred in defending against and responding to Plaintiff's Motion for Leave to Supplement Expert Designation included drafting, editing, proofing, and finalizing the Response (DE 166), which ultimately was 18 pages long; identifying certain case law in support of the Response and incorporating same; identifying all the exhibits (3, including several subparts) and preparing them for filing; and drafting an order. Thus, part of that work was actually writing and editing the 18-page Response and preparing the three exhibits for same. Part of the work included certain legal research on related issues, particularly as to the excludability of the expert report and opinion given the history of this matter (especially the continuance of the trial) and as to whether sanctions might be appropriate, given these facts. Part of the work also involved reviewing the overall history of this matter, prior filings on this topic, the prior Court orders, and the email history of the parties, and part of this work included researching the experience of Plaintiff's counsel (see Exs. A and B to the Response). All of this work was necessary to support the Response and to identify and prepare exhibits for the Response.

19. "While I did most of this work, Ms. Green also assisted, principally in the area of legal research, though she provided also an initial review of the Motion (focusing on the legal arguments raised), and she also provided some editing assistance on the Response. Exhibit D is a true and correct copy of the relevant portions of the invoice showing the hours spent on the work by Ms. Johnson and Ms. Green. The hours reflected in that bill were 14 hours for the undersigned and 7.5 hours for Ms. Green. I have not included .7 hour of Ms. Green's time (on November 19, 2020) which was merely review of Plaintiff's reply brief.

4

20. "This work is summarized as below:

Ms. Johnson's Work, totaling 14 hours

- November 3, 2020: Ms. Johnson's work began with some initial review, organization or outline of the expected Response, consideration of issues that might be reviewed or researched, and the beginning of the draft Response (1.5 hrs.).

- November 10, 2020: Ms. Johnson continued drafting the Response (4.0 hrs.).

- November 11, 2020: Ms. Johnson completed the draft, including some research of the history of the matter, the emails of the parties, and the Court's prior orders.  Also reviewed was the experience of Plaintiff's counsel and cases in which Plaintiff's counsel had previously been involved.  She selected the three exhibits (some with subparts) and prepared them for filing.  She drafted an order.  She filed the Response at about 10:30 p.m., after having worked on it for quite a bit of the day (8.0 hrs.).

- November 25, 2020: Ms. Johnson reviewed the Magistrate's order (DE 168) and communicated by email with her clients and with various persons in the KRCL firm about the decision and likely next steps (.5 hr.).

Ms. Green's Work, total 7.5 hours

- November 4, 2020:  Ms. Green reviewed the Motion and provided comments about various arguments raised and possible responses thereto (1.2 hrs.).

- November 10, 2020: Ms. Green reviewed and provided a summary of case law concerning various appellate rulings in this area, as to the standards applicable and the facts and factors involved in considering a late designation, especially given the trial continuance (2.4 hrs.).

- November 11, 2020:  Ms. Green reviewed case law as to whether sanctions might be recoverable in this circumstance, and she assisted in the editing and review of the Response (3.9 hrs.).

21. "All of this work was necessary to respond to the Motion, as there were several arguments to address, a lengthy history to review, and legal factors that had to be considered.

22. "Thus, Ms. Johnson's hours total $5,600 (14 x $400), and Ms. Green's hours total $2,062.50 (7.5 x $275).   The total combined was $7,662.50.   The

5

undersigned contends that this total, $7.662.50, is a reasonable fee for the work described, which work was necessary to complete the Response. In sum, the total of the reasonable and necessary lawyer fees for responding to the Plaintiff's Motion for Leave to Supplement Expert Designation was $7.662.50. As noted, I also did not include .7 hour of Ms. Green's time on November 19, 2020, which was merely a review of the Plaintiff's reply brief. Finally, in the interest of justice, professionalism, economy and expeditiousness (if possible), the undersigned is willing to discount this total by 10%, or $766.25, for a total of **$6,896.25,** for the total fees sought on this issue.

23. "The discounted fees noted (**$6,896.25**) are reasonable and were necessary for Defendants to respond (DE 166) to the Plaintiff's Motion for Leave to Supplement Expert Designation (DE 163). In offering these reasonable and necessary fees I have considered the following:

    a.  the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

    b.  the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

    c.  the fee customarily charged in the locality for similar legal services;

    d.  the amount involved and results obtained in the controversy;

    e.  the time limitation imposed by the client or the circumstances;

    f.  the nature and length of the professional relationship with the client;

    g.  the experience, reputation and ability of the lawyers performing the service; and

    h.  whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

24. "I base my statements herein, as to the legal fees incurred in responding to the Motion for Leave to Supplement Expert Designation, on **(i)** my personal knowledge of (a) the allegations in this case, of (b) the Court's orders, particularly its scheduling order, and of (c) all the numerous pleadings and motions in this case, and on **(ii)** my experiences and knowledge overall in (a) this controversy, and (b) the discovery served and responded to (including Plaintiff's expert designation), and (c) the numerous hearings with the Court. I am knowledgeable about the legal work performed and the fees incurred in this case because I have worked on this case, and because I have over 37 years of education, knowledge and skill as a private practice attorney, including direct work with the KRCL professionals working on this case (since August 2015). I also am familiar with the billing sent to our client (*see* Ex. D), and my review

and analysis of the attorney's fees invoices in this case in comparison with the foregoing factors. I am also knowledgeable about the facts and rates that are commonly charged in both Harris and Nueces Counties, and these rates and fees are customary as well as being reasonable and necessary for the work involved.

25. "There are no expenses associated with the work on the Response (DE 166), other than the attorneys' fees put into the project. There also was no time expended by a legal assistant on this matter, and, as noted, I have not included the little time spent in looking at and forwarding the appeal filed by Plaintiffs, and I have not included .7 of Ms., Green's time, as noted above. I have further discounted the total by 10%, as a matter of professional economy. Finally, I have not included any time spent in preparing this Affidavit with its exhibits.

26. "Based on the above review and analysis, it is my opinion:

- that the attorneys' fees of KRCL (**$6,896.25**) noted herein (which are discounted from the actual total of $7.662.50) are necessary and reasonable under the facts and circumstances of this case and under the relevant standards, as to the Motion for Leave to Supplement Expert Designation;

- That this matter has been appropriately staffed with attorneys at KRCL at appropriate levels and with appropriate expertise based on the issues presented;

- That the hourly rates charged by all attorneys working on the case are reasonable given the complexity of the issues involved, based on the experience, reputation, education and ability of the attorneys, the number of parties involved in the litigation and fees customarily charged for similar services in Nueces County, Texas, particularly in federal lawsuits involving the claims noted;

- That the amount of time spent by each attorney working on the case is reasonable given the complexity, novelty and difficulty of the issues involved and the skill requisite to properly perform the legal services;

- That KRCL's fees have been properly segregated as necessary under Texas law. The methodology I followed when I segregated out Defendants' fees included, but was not limited to, reviewing the invoice (Ex. D) and determining the hours allotted to responding to the Motion for Leave to Supplement Expert Designation.

- Based on all of this experience and knowledge, I submit this request for the **$6,896.25**, the discounted amount of fees expended in working on the Response to the Motion, which I have further explained in detail in this Affidavit.

27. "In sum, it is my opinion that the attorney's fees sought in the total discounted amount of **$6,896.25,** are reasonable and necessary, equitable and just, and within the range of usual and customary fees charged in and around Nueces County, Texas, for work of this nature in relation to responding to the Motion for Leave to Supplement Designation of Expert.

28. "Finally, I note that a similar filing in a Declaration with similar proof was submitted to this Court (DE 126) as to a related sanctions issue, and this Court accepted that evidence, as well (DE 136 & 157)."

FURTHER AFFIANT SAYETH NOT.

Executed in Harris County, State of Texas on this 21ˢᵗ day of December, 2020.

Andrea M. Johnson

Subscribed and sworn to before me this 21ˢᵗ day of December, 2020.

**Christina Richison**
**Notary Public, State of Texas**
**Notary ID 1180012-5**
**My Commission Exp. 04-19-2022**

Notary Public,
in and for Harris County, Texas.

8

# EXHIBIT A



# KANE RUSSELL COLEMAN LOGAN

# Andrea Johnson

**DIRECTOR**

Andrea "AJ" Johnson, a director at the Firm, has been practicing in employment law and employment/commercial litigation for more than 30 years. She represents clients all over the nation, provides day-to-day advice on critical, time-sensitive business and employment matters, has tried numerous cases to successful verdict and/or to dispositive adjudication, and has arbitrated and enforced mandatory arbitration programs in several states.

AJ has a straight-forward approach. She seeks the most expedient and effective way to resolve matters and to find the best path forward for clients through prevention and training protocols, to avoid litigation entirely. She developed her approach from years of experience handling a variety of dockets in the areas of employment, general commercial, and national product liability law. In recent years, her practice has included learning about and providing advice to numerous oil and gas and energy services companies, among many other clients, on all issues touching employers and employees, such as the Fair Labor Standards Act (overtime and class action litigation), noncompetes and nonsolicitation agreements, RIFs, WARN Act issues, 409A compliance, drug screening, general employee discipline and counseling issues, policies, leave rights and responsibilities, Texas state employment concerns, and all manner of compliance under Title VII, the ADEA, the FMLA, & ADA – among many other statutes.

Due to AJ's determined and successful approach, she has had considerable favorable results in court over the years, including successfully defending and guiding companies through numerous overtime class actions and DOL audits, winning discrimination actions of first impression, obtaining one of the largest commercial verdicts in 2013 in Texas, obtaining a summary judgement invalidating a patent, and obtaining a complete defense verdict in a $54 million alleged slander suit in Galveston County (cited in the "Biggest Suits" section of *Texas Lawyer*).

## Practice Focus

Complex Commercial Litigation, Employment

## Honors

- AV Preeminent®, Martindale Hubbell
- Super Lawyers, Thomson Reuters (2008-2018)
- Best Lawyers in America©, U.S. News & World Report (2018 - 2019)
- Top Lawyers – Labor and Employment, *Houstonia Magazine* (2016)
- Martindale "Top Rated Lawyer" in both Employment Law and Commercial Litigation
- Recognized by Texas Lawyer as lead trial counsel of one of the top commercial verdicts of 2013



ajohnson@krcl.com
**DIRECT** 713-425-7433
**MAIN** 713-425-7400
**FAX** 713-425-7700

Galleria Tower II
5051 Westheimer Road
10th Floor
Houston, Texas 77056

**LAW SCHOOL**

Loyola Law School (Loyola Marymount University)
J.D., 1981

**UNDERGRADUATE**

University of California
B.A.*, magna cum laude*, 1978

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC



# Admissions

- State Bar of Texas, 1984
  - United States District Courts in the Northern, Southern, Eastern and Western Districts of Texas
- State Bar of California, 1981
  - United States District Courts in the Central and Eastern Districts of California
- U.S. Supreme Court
- United States Court of Appeals for the Fifth Circuit
- United States District Court in the Western District of Oklahoma

# Associations

- Former Briefing Clerk to the Honorable Hugh Gibson, Jr. (United States District Court, Southern District of Texas), 1981-83.
- State Bar of Texas, Labor and Employment Section and Women and the Law Section
- State Bar of Texas, Women and the Law Section
- Houston Bar Association, Labor and Employment Section
- Society of Human Resource Management
- Texas Bar Foundation, Texas Bar Fellow
- Garland Walker Inn of Courts
- American Bar Association
- National Association of Women Lawyers
- Texas Women Lawyers

# Experience

**Recent Representations:**

- Defended and resolved favorably a large overtime class action involving issues regarding worker classification for 200 workers/employees in an energy services company
- Defended and resolved favorably a company-wide Department of Labor audit as to overtime issues for several hundred employees in an energy services company
- Defended and resolved favorably an overtime class action involving a class of 27 workers for a Houston-based engineering services business
- Defended and resolved favorably several overtime lawsuits involving a single plaintiff or small groups of workers for energy and non-energy companies
- Defended a multinational chemical manufacturing company as to an EEOC sexual harassment claim concerning a worker at a Texas site
- Defended and successfully resolved a federal lawsuit concerning the president of an international company in regard to sexual harassment events in Texas and New York
- Defended in arbitration a Houston-based start-up entity in regard to demands for over $500,000 in alleged sales commissions and fees
- Defended and resolved favorably an EEOC claim against a Canada-based services company as to sexual harassment allegations involving its Houston branch office
- Prosecuted a breach of contract lawsuit in state court for a Houston-based technology company
- Defended successfully a tortious interference, noncompetition, nonsolicitation lawsuit, including a temporary injunction hearing, for a Houston-based medical recruiting company

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC



- Assisted a senior executive with an internet stalking issue
- Represented high-ranking executives in resolving several employment agreement and severance agreement issues
- Assisted a company with cease and desist actions involving noncompetition and confidentiality issues
- Provided day-to-day advice for both oil & gas/ energy services companies and many other non-energy entities, as to all issues involving employers and employees, such as the following:
  - The Fair Labor Standards Act (overtime and minimum wage issues)
  - RIFs – small and organization-wide
  - WARN Act issues
  - 409A compliance
  - Drafting and enforcing independent contractor contracts
  - Noncompetes, confidentiality, and nonsolicitation issues
  - Benefit issues
  - General employee discipline and counseling issues
  - Personnel handbooks (writing from scratch or revising and updating)
  - Job applications
  - Investigations of misconduct or complaints of harassment
  - Drug screening
  - Overtime compliance
  - Employee compensation
  - FMLA & ADA compliance
  - Lawsuit avoidance as to various statutory issues including Title VII, ADA, FMLA, FLSA, etc.

## Publications

- "Classifying Workers – Contractor Versus Employee – The Who, What, Where and Why?" presented at the Houston Business (Cabinet, Houston, February 19, 2013)
- "Hiring Your First Employee or Contractor," presented at University of Houston Small Business Development Center, Houston, (February 13, 2013)
- "The Energy Industry and Employment Law: A Match Made in Heaven?" presented at Texas Lawyer's In-house Counsel Summit, San Antonio (September 6, 2012)
- "Whose Tweet Is It Anyway?" HR Matters eNewsletter, Texas SHRM Council (October 2012)
- "Key Facts, Critical Law: Saying Good-bye to Employees Within Legal Bounds," Burleson Cooke Continuing Education Series (March 31, 2009)
- "Equal-pay Measures Will Ignite Litigation," National Law Weekly (January 2009)
- "HR Strategies Q&A: Communication and Costumes," Houston Business Journal (October 2008)
- "Terminating Employment When a Non-compete Is Involved," Oil & Gas Financial Journal (August 2008)
- "Artful Intelligence, Tools, and Techniques for Best Lawyering," moderator and organizer of daylong event for Texas Women Lawyers, Annual CLE Program, Houston (February 2010)
- "A Little of This and a Little of That about Employment and Discrimination Laws," presented at U.S. Veterans Program, Houston (October 2009)
- "Social Media: The Employer's Advantage," presenter in panel discussion at South Texas College of Law, Employment Law Course, Houston (July 2009)
- "Cutting-Edge Employment Issues," presented for HEB Markets, Houston (July 2009)
- "How Are We Meeting the Challenge of Diversity in These Economic Times?" moderator of panel discussion for Diversity Forum, State Bar of Texas Annual Meeting, Dallas (June 2009)
- "Changing Employment Laws and Their Effect on Women in the Workplace," moderator and organizer of panel discussion for Women and the Law Section, State Bar of Texas Annual Meeting, CLE Program, Dallas (June 2009)

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

**KANE RUSSELL
COLEMAN LOGAN**

- "Securing Hiring Success: Easy Guides to Empower Business," presented for various chemical companies of Louisiana and Texas, Galveston, Texas (May 2009)
- "Déjà Vu: Union Issues, Legislation, and Prevention," presented for LANXESS Corporation, Orange, Texas (April 2009)
- "Key Facts, Critical Law: Saying Good-bye to Employees Within Legal Bounds," presented at Corporate Breakfast Meeting, Burleson Cooke L.L.P., Houston (March 2009)
- "Chart Your Successful Path Forward," moderator and organizer of panel discussion for Texas Women Lawyers Annual CLE Program, Austin, Texas (February 2009)
- The Lawyer, Abraham Lincoln," participant in award-winning program at Garland Walker Inn of Court, American Inns of Court, Houston (February 2009)
- "Witness Deposition Tactics: The Games People Play," presenter in panel discussion, ALI-ABA Webcast (January 2009)
- "Current Practical Issues in the Damages Case," presented at Advanced Employment Law Seminar, University of Houston, Houston and Dallas (Fall/Winter 2008-09)
- "Emerging Issue of Employee Blogging: What Every Employer Should Know," presenter in panel discussion, ALI-ABA Webcast (November 2008)
- "When an Employee's Private Life Becomes Your Business: Workplace Internet & Employee Blogs," presenter in panel discussion at Employment Law Conference, South Texas College of Law, Houston (July 2008)
- "Growing Your Business from Start to Finish," presented at Women's Business Enterprise Alliance, Houston (July 2008)
- "The Changing Demographics in Texas," presented at Diversity Summit, 2008 Bar Leaders Conference, Spring, Texas (July 2008)
- "Lawyers, Their Life, and Their Vision in the Diverse 21st Century," moderator and organizer of panel discussion at Diversity Forum, State Bar of Texas Annual Meeting, Houston (June 2008)
- "Blogs, Social Networking, and Web 2.0: Employees Use These Tools, Should Companies Have Rules?" presenter in panel discussion at American Bar Association Section of Business Law, Dallas (Spring 2008)
- "Blogs, Technology, & the Workplace: Connecting Employment Strategies in 2008… and Beyond!" presented at 17th Annual Gulf Coast Symposium on Human Resource Issues, Houston (May 2008)
- "Anti-Trust Orientation: Or, Is the Price Right?" presented for various chemical companies of Louisiana and Texas, Baton Rouge, Louisiana (May 2008)
- "Securing Hiring Success: Easy Guides to Empower Business," presented at Spring Seminar Program, Houston Bar Association, Houston (April 2008)
- "Drafting Employment Contracts: The Three C's and Other Issues," presented at State Bar of Texas Advanced Employment Law Seminar, Houston (February 2008)
- "Everything You Want to Know about Employment Law… But Were Afraid to Ask!" CLE Program presented for Chubb Group of Insurance Companies, Dallas (October 2007)
- Roundtable participant with EEOC Commissioner Stuart Ishimaru, EEOC Offices, Houston (September 2007)
- "The Top Ten Tools to Improve Employee Relations and Reduce Costs," presented at University of Houston, Small Business Development Center (August 2007)
- Moderator of panel discussion for Diversity Summit, Texas State Bar Leaders Conference, Houston (July 2007)
- Moderator and coordinator of panel discussion for Diversity Forum, State Bar of Texas Annual Meeting, San Antonio (June 2007)
- "Everything You Want to Know about Employment Law… But Were Afraid to Ask!" presented at Annual Meeting of Louisiana Primary Care Association, Inc., and Southwest Regional Primary Care Association [pro bono affiliation with Pfizer, Inc.], New Orleans (June 2007)
- Moderator and organizer of Legislative Action Committee's seminar presentation (directing discussion with three state legislators and a Rice professor of an overview of state legislation), HR Houston Luncheon, Houston (June 2007)
- "When an Employee's Private Life Becomes Your Own," moderator of panel discussion at Employment Law Conference, South Texas College of Law, Houston (July 2007)
- "Workplace Internet and Employee Blogs-Dooc ing (Termination Based on Internet Content)," presented at Spring Continuing Education Seminar for various chemical companies, New Orleans (April 2007)

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

**KANE RUSSELL
COLEMAN LOGAN**

- "The Ten Best Ways to Protect Your Business from Employment Claims," presented at Greater Heights Lunch and Learn Program, Houston (April 2007)
- "Blogs, Email, & Technology: Connecting Employment Strategies in 2007… and Beyond!" organizer and moderator of in-house HR seminar for Powers & Frost, Houston (March 2007)
- "Ensuring Litigation Readiness: Going Beyond the Standard Zubulake Analysis to Meet the Demands of the Life Sciences Industry," presenter in panel discussion at E-Discovery & Litigation Readiness for Life Sciences, National CLE Program, New York (February 2007)
- "Everything You Want to Know About Employment Law… But Were Afraid to Ask!" organizer and presenter of workshop at University of Houston, Small Business Development Center, Houston (February 2007)
- "Multiple Entities," presented at 15th Annual Advanced Employment Law Course, Texas CLE Program, Dallas (February 2007)
- "Effective Case Management: Facilitating Claims Management Between the Insured, Carrier, and Defense Counsel," presenter in panel discussion at 12th Annual Conference on Employment Practices Liability Insurance, New York (January 2007)
- "Workplace Internet and Employee Blogs-Doocing (Termination Based on Internet Content)," presented at University of Houston Law Foundation, Advanced Employment Law for Employers and Employment Lawyers, Dallas and Houston (November and December 2006)
- "Labor & Employment Roundtable," presenter in panel discussion in Houston, August 2006; proceedings published in Texas Lawyer (November 2006)
- "Retaliation and Whistleblowing, The New Litigation Frontier," organizer and moderator of Pfizer Inc.'s National Web-Conference: Strategic Legal Thinking for Not-for-Profit Executives (Spring and Fall 2006)
- "Integrating Security and Accuracy Measures into Your Document Retention Policy," presented at E-Discovery Preparedness for the Pharmaceutical Industry, New York (March 2006)
- "Retaliation Claims – Dodging a Bullet (Did You See It Coming?) – How to Avoid Employment Retaliation Claims," presented at Houston Bar Association, Houston (March 2006)
- "Everything You Want to Know About Employment Law… But Were Afraid to Ask!" presented at IEEE Meeting, Houston (December 2005)
- "Employment Law Update, Issues and Trends – 2005," presented at HR Houston Quarterly Meeting, Houston (September 2005)
- "The Basics of Employment Law: A Woman's Perspective," presented at Annual CLE Program, Texas Women Lawyers Association, Houston (February 2005)
- "Legal Claims and the Practical Impact on Employee Relations," presented at various Houston business seminars (2000-05)
- "Co-employment Issues: Independent Contractors, 'Leased Employees,' and Employees," presented at Bayer Corporation training program, Baytown, Texas (Fall 1999)
- "Sexual Harassment: Defining, Discussing, and Dealing with the Problem," presented at M. David Lowe Seminar, Houston (Fall 1994)
- Coauthor, "The Close Case – Handling Difficult Sexual Harassment Claims," State Bar of Texas Advanced Employment Course (December 1994)
- "The Perils of Privileges: Asserting and Attacking the Limits on Discovery and Evidence," presented at Houston Bar Association Seminar, Houston (September 1992)
- "Work Product and Party Communications Privileges: Recent Texas Developments," presented at Houston Bar Association Seminar, Houston (September 1992)
- Coauthor, "Texas Work Product Rule Extended," The Advocate (December 1991)

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

**KANE RUSSELL**
**COLEMAN LOGAN**

## Presentations

- "Current Employment Law Trends: or have you seen my crystal ball anywhere?", KRCL Litigation Seminar, February 2017
- "Understanding Overtime Today: The Basics, The Risks, and The New Regulations", KRCL Employment Seminar, November 2016

## Community

- American Bar Association
- Garland Walker Inn of Court (American Inns of Court)
- Houston Bar Association (Labor and Employment Section)
- National Association of Women Lawyers
- Society of Human Resource Management
- State Bar of Texas (Labor and Employment Section and Women & the Law Section – Treasurer, 2013; Chair, 2009-10)
- Tahirih Justice Center, Pro Bono Committee, 2015
- Texas Bar Foundation "Texas Bar Fellow"
- Texas State Bar Council of Chairs, 2009-10
- Texas Women Lawyers (nonprofit association) – President, 2010

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

# EXHIBIT B



**KANE RUSSELL**
**COLEMAN LOGAN**

ANDREA M. JOHNSON
DIRECTOR
Direct Number:  (713) 425-7433
E-Mail:  ajohnson@krcl.com

<u>CONFIDENTIAL</u>
<u>ATTORNEY CLIENT</u>
<u>PRIVILEGED COMMUNICATION</u>

October 2, 2018

*Via Email:  exxizzotero@gmail.com*

Mr. Matthew Otero
Exxizz Foods, Inc.
713 N. Pearl Street
Rockport, TX 78382

      Re:    Firm Retention Agreement between Exxizz Foods, Inc. and Kane Russell
            Coleman Logan PC (the "***Agreement***")

Dear Mr. Otero:

      This Agreement is to confirm that Exxizz Foods, Inc. (the "***Client***") has retained
Kane Russell Coleman Logan PC (the "***Firm***") to represent it in connection with the
Engagement as hereinafter defined.  This Agreement sets forth the terms of the Firm's
retention, and constitutes a contract between Client and the Firm with respect to the
Firm's legal representation of Client in the Engagement.

      **Scope of Engagement.**  The Firm will represent Client as legal counsel in
connection with Cause No. 2:18-cv-259; *Sopheak Otero v. Exxizz Foods, Inc., d/b/a
Rockport Donuts* – United States District Court  – Southern District of Texas – Corpus
Christi Division (the "***Engagement***") and related matters, including any day-to-day
employment matters.  If Client engages the Firm on additional legal matters, then this
Agreement will apply to those matters as well, unless a separate retention agreement is
executed for such matters.

Dallas
1601 Elm Street
Suite 3700
Dallas, Texas 75201
214 777.4200

Houston
5051 Westheimer Road
Suite 1000
Houston, Texas 77056
713.425.7400

**CONFIDENTIAL**

Mr. Matthew Otero
Exxizz Foods, Inc.
October 2, 2018
Page 2

I do personally appreciate the trust that you have placed in my firm and in me. I am honored to help.

**Principal Attorneys.** Subject to change in the future, Ms. Andrea M. Johnson is Client's principal attorney for the Engagement. Other attorneys and legal assistants may be assigned as necessary to achieve proper staffing. Ms. Johnson's rate is $400 per hour and her Firm designated e-mail address is ajohnson@krcl.com. Client agrees to contact Ms. Johnson should Client have any questions concerning the Engagement, the Firm's fees, expenses or other charges, or any other matter addressed in this Agreement.

**Fees.** All fees are quoted in United States Dollars without any adjustment for conversion in other currencies. The Firm's fees for services rendered in connection with the Engagement are based on the time spent by the Firm's attorneys, legal assistants and other professional staff who work on the Engagement, multiplied by their respective hourly rates. The hourly billing rates for attorneys currently range from $325 to $625 for Directors, from $250 to $450 for Associates, and from $135 to $230 for Legal Assistants. Support personnel and administrative electronic data discovery services will be charged at rates ranging from $150 to $250. Other attorneys and legal assistants may be assigned as necessary to achieve proper staffing. We have provided additional information about how the Firm's fees are determined in the Firm's Standard Terms for Legal Engagement, attached as or as provided in Exhibit "A".

**Fees for Independent Contractor Attorneys.** Certain of the legal services to be delivered to Client may, with Client's consent, be performed by Texas licensed attorneys engaged by the Firm as independent contractors at a fixed hourly rate. In such cases, the Firm's fees will be based on an agreement between Firm and the independent contract attorney who assumes joint responsibility for the representation of Client. The Firm will charge Client for the independent contractor's legal services at a reasonably "marked-up rate," which rate will not exceed the reasonable, usual and customary rates available in the Texas legal services marketplace for the same or similar services by an attorney of comparable experience. Consequently, upon Client's payment of fees charged by the Firm for the independent contractor's legal services, Client understands that such fees will be split between the Firm and the independent contractor in accord with the Firm's agreement with such attorney and Client hereby authorizes such fee split in accordance with such agreement between the Firm and the independent contractor.

CONFIDENTIAL

Mr. Matthew Otero
Exxizz Foods, Inc.
October 2, 2018
Page 3

**Expenses and Other Charges.**  In addition to fees, the Firm's statements will include expenses and other charges incurred in connection with the Engagement. Those charges are more particularly described in the Firm's Standard Terms for Legal Engagement.

**Entire Agreement.**  The Firm's Standard Terms of Legal Engagement are attached hereto as Exhibit "A" and incorporated herein by reference.  Together with the attached exhibits, this Agreement sets forth the entire agreement of the parties, and may not be modified except in writing signed by all parties.  There are no oral understandings or agreements of the parties, and no oral representations have been made.

If the foregoing terms and conditions for the Firm's representation of Client in the Engagement are acceptable, then please so indicate by executing the enclosed copy of this Agreement in the space provided below and returning it to me as soon as possible. The Firm appreciates your business and looks forward to working with you.

Very truly yours,

KANE RUSSELL COLEMAN LOGAN PC

By: _____
Andrea M. Johnson, For the Firm

Attachment
CC: ACCOUNTING

**READ, UNDERSTOOD AND AGREED THIS 3rd DAY OF OCTOBER, 2018:**

**CLIENT: Exxizz Foods, Inc.**

By: _____  An e-file signature
**Mr. Matthew Otero**

**CONFIDENTIAL**

## EXHIBIT "A"

## KANE RUSSELL COLEMAN & LOGAN PC

### Standard Terms of Engagement
### for Legal Services

This Exhibit sets forth certain standard terms relating to your retention of the Firm as legal counsel in connection with the Engagement, and is intended as a supplement to the Firm's Agreement with Client executed in connection therewith. Unless modified in writing by mutual agreement, these terms will be an integral part of the Firm's Agreement with Client. Therefore, please review this Exhibit carefully and contact the Firm promptly if you have any questions. Please retain this Exhibit in your file as part of the Agreement.

#### The Scope of the Firm's Work

The Firm will represent you as legal counsel in connection with the Engagement. You should always have a clear understanding of the legal services the Firm will provide. If you ever have any questions concerning the scope or nature of these services, you agree to advise the Firm of such questions promptly, and in writing.

The Firm will at all times act on your behalf to the best of its ability. Any expressions by the Firm concerning the outcome of the Engagement are expressions of the Firm's best professional judgment, and are not guarantees of any particular result. Such opinions are necessarily limited by the Firm's knowledge of the facts and are based on the state of the law at the time they are expressed.

It is the Firm's policy that its client is the person or entity that is identified in this Agreement, and absent an express agreement to the contrary, such representation does not include any affiliates of such person or entity (i.e., if you are a corporation or partnership, any parents, subsidiaries, employees, officers, directors, shareholders or partners of the corporation or partnership, or commonly owned corporations or partnerships; or, if you are a trade association, any members of the trade association). If you believe that the Engagement includes additional entities or persons as clients of the Firm who are not specifically identified as clients in the Agreement, you agree to inform the Firm of that belief immediately.

The Engagement is subject to and governed by the Texas Disciplinary Rules of Professional Conduct (the "Disciplinary Rules").

#### Cooperation

To enable the Firm to more effectively render legal services to you, it is essential that you fully and accurately disclose all facts and keep the Firm fully apprised of all developments relating to the Engagement. You have agreed to cooperate fully with the Firm and to make yourselves available to aid the Firm's preparation for and, if necessary, attendance at or to: meetings, conferences, hearings, depositions, and other matters in connection with the Engagement. In addition, you agree to spend the time necessary to respond to discovery, if any, consider strategy,

provide factual information, and otherwise fully cooperate with the Firm in connection with the Engagement.

#### Electronically Stored Information

If litigation is filed or threatened, you have a continuing obligation to preserve from all sources, and to maintain in their current forms without alteration, all documents, data, and electronically stored information that in any manner relate or may relate to the Engagement. Failure to preserve such documents, data, and electronically stored information could result in penalties or sanctions under the applicable Rules of Civil Procedure. Accordingly, please take every reasonable step to preserve these items until further notice. This obligation applies to you and your employees, agents, contractors, and consultants. For this reason, as to such existing documents, data and electronically stored information, you must also immediately suspend any policies or practices under which these items would otherwise be deleted, overwritten, erased, destroyed or disposed. If you have not already done so, the Firm recommends that you immediately consult with the appropriate personnel to obtain detailed guidance on how to preserve such existing documents, data, and electronically stored information.

For a complete text and further explanation, see:

http://www.uscourts.gov/rules/Ediscovery_w_notespdf. We request your cooperation and assistance in preserving this data.

We would also advise you that electronically stored information has been interpreted to include the following:

- Email messages and files;
- Voicemail messages and files;
- Databases;
- Data files;
- Program files;
- Back-up and archival tapes;
- Temporary files;
- System-history files;
- Deleted files, programs or emails;
- Website files and log files;
- Website information stored in textural, graphical or audio format;
- Cache files;
- Cookies.

In addition to preserving electronically stored information, we would also call your attention to the need to preserve other records and documentation in your possession which pertain or relate to any legal matter for which our law firm has been retained. Preservation of these records/documents is important with respect to the legal process. The law in Texas generally provides that a party has a duty to preserve relevant evidence which arises

CONFIDENTIAL

during pending litigation and there is legal authority to similarly impose a pre-litigation duty to preserve evidence whenever a party is on "notice" of potential litigation. Generally speaking, the party is held to be on "notice" of potential litigation when it is reasonably foreseeable that litigation or other legal process will ensue. In the event that a party or company fails to properly preserve these records/documents, we would advise you that there could be serious ramifications, including, but not limited to, claims by an opponent which may result in court-imposed sanctions against you. The Firm is calling this matter to Client's attention since Client is in the best position to know and understand what sort of records or documents are maintained by you and any document retention policies which may impact the preservation of this evidence. If you have any questions concerning this subject or understanding your responsibilities, please let us know.

### Who Will Provide the Legal Services

Customarily, each client of the Firm is served by a principal attorney contact. The principal attorney should be someone in whom you have confidence and with whom you enjoy working. You are free to request a change of your principal attorney at any time. Subject to the supervisory role of the principal attorney, your work or parts of it may be performed by other attorneys and legal assistants in the Firm. Such delegation may be for the purpose of involving attorneys or legal assistants with special expertise in a given area or for the purpose of providing services on the most efficient and timely basis. Upon written request, the Firm will advise you of the names of those attorneys and legal assistants who work on your matters.

### How the Firm's Fees Will Be Set

Generally, the Firm's fees are based on the time spent by the attorneys and legal assistants who work on the Engagement. The Firm's attorneys and legal assistant's record and charge time in increments of 1/10th hours. The Firm will charge for time spent in representing your interests, including, by way of illustration, telephone and office conferences; factual investigation; legal research; responding to your requests to provide information to your auditors in connection with reviews or audits of financial statements; drafting and reviewing letters, emails and other documents; discovery; trial preparation and attendance; mediations, arbitrations and settlement meetings; and other efforts undertaken on your behalf as necessary in connection with the Engagement. The Firm will keep accurate records of the time devoted to your work. If at any time you become concerned that any amount of time expended is not reasonable under the circumstances, you agree to notify the Firm immediately of such concern in writing.

The Firm reviews and adjusts the hourly rates of its attorneys and legal assistants annually on a Firm-wide basis to reflect current levels of legal experience, changes in overhead costs, and other factors. The Firm usually makes any adjustments effective January 1st of each year. If at any time you question whether such rate or rates are

reasonable under the circumstances, you agree to notify the Firm immediately of such concern in writing.

For certain well-defined services (for example, a simple business incorporation), the Firm may (if requested) quote a flat fee. It is the Firm's policy not to accept representation on a flat-fee basis except in such well-defined areas or pursuant to a special arrangement tailored to the needs of a particular client. In all such situations, the flat fee arrangement will be expressed in a letter, setting forth both the amount of the fee and the scope of the services to be provided.

The Firm will also, in appropriate circumstances, provide legal services on a less traditional fee basis such as a contingent fee basis. Any fee arrangement other than as described above must be the subject of a separate and specific Engagement letter.

### Expenses and Other Charges

In addition to fees, the Firm's invoices will include a detailed listing of expenses and other charges for items incident to the performance of legal services, such as photocopying, messenger costs, travel expenses, long-distance telephone calls, facsimile transmissions, postage, overtime for secretaries and other nonlegal staff, word processing charges, specialized computer applications such as computerized legal research, filing fees, exhibit preparation, deposition transcripts, expert and consulting witness fees and IT processing services necessary to comply with rules regarding electronic data discovery. The current basis for some of these charges is set forth below. The Firm will review this schedule of expenses and other charges on an annual basis and adjust them as necessary to take into account changes in the Firm's costs and other factors.

Duplicating/Photocopying

The Firm generally charges $.15 per page for copies generated internally within the Firm. If outside copy vendors are utilized, the cost may vary depending upon the services rendered. The Firm does seek to contract with outside vendors based upon competitive rates. Depending on the timing of the Firm's payment to outside copy vendors, the Firm may receive a discount for which no adjustment is made on an individual client's bill.

Delivery/Courier Services

The Firm charges an amount which generally represents its cost for the delivery service provided by the Firm. The Firm also contracts with outside vendors on a competitive fee basis. Depending on the volume of work performed by an outside delivery vendor, the Firm may receive a volume discount during a particular accounting period for which no adjustment is made on an individual client's bill.

Facsimile Transmissions

The Firm charges $1.00 per page for outgoing local facsimile transmissions, and $2.00 per page for outgoing long distance facsimile transmissions, which includes all telephone costs. International facsimile transmission charges will vary depending upon telephone long distance

CONFIDENTIAL

charges which will be passed on to the client. No charges are incurred by the client for incoming facsimile transmissions or incoming or outgoing e-mails.

Telephone

The Firm does not charge for expenses relating to local calls. The Firm does bill each individual call based on the statements received from providers for each long distance and international call made on a client's behalf.

Travel-Related Expenses

The Firm charges airfare, ground transportation, hotel, meals, and related travel expenses based upon the actual, out-of-pocket cost. The Firm or individual attorneys may receive beneficial services from travel agencies, including airline tickets, for which no adjustment is made on an individual client's account. In addition, credits earned under any frequent flyer programs accrue to the individual traveler and not to the Firm.

All Other Costs

The Firm charges actual disbursements for third-party services such as court reporters, expert witnesses, etc., and may recoup expenses reasonably incurred in connection with services performed in-house, such as mail services, delivery services, file retrieval, etc.

Unless special arrangements are otherwise made, fees and expenses of others (such as experts, investigators, consultants and court reporters) will be the responsibility of, and billed directly to you. Further, all invoices in excess of $500 will generally be forwarded to you for direct payment. If, however, vendor invoices are paid by the Firm, such charges will be added to the Firm's invoices.

### Cost Estimates

From time to time at your written request, the Firm may furnish estimates of legal fees, expenses and other charges that it anticipates will be incurred in connection with its representation of you in the Engagement. Because of the uncertainties inherent in all legal representation, such estimates are inexact. Therefore, the Firm's actual fees and other charges billed may vary significantly from such estimates. In any event, you agree to pay all fees, expenses and other charges incurred.

### Billing Arrangements and Terms

The Firm's billing rates are based on the assumption of prompt payment. Consequently, unless other arrangements are made, the Firm's fees, expenses and other charges will be billed monthly and are payable immediately upon receipt. To the extent you have any questions about an invoice, you agree to promptly raise such questions with the Firm in writing. Otherwise, the Firm will assume that you do not have any questions with respect to the Firm's invoices, that you accept the invoiced charges as fair, reasonable, necessary and appropriate under the circumstances, and that you agree that such amounts are properly due and owing to the Firm without defense or offset. You agree that if a credit card is used for payment of a retainer or monthly invoices that an additional charge of 2% of the amount charged will apply.

If you fail to pay the Firm's invoice within thirty (30) days of the date of the invoice, the Firm is authorized to draw from the retainer, if one was required, the amount necessary to pay the outstanding invoice. In addition, failure to pay the Firm's invoice within that time is also a basis for the Firm's withdrawal from your representation.

Further, in the event the Firm's invoices are not paid within thirty (30) days of the date of the invoice, the Firm reserves the right to charge interest on the past due balance at the rate of ten (10%) percent per annum. If invoices become delinquent for a period exceeding six (6) months, the Firm reserves the right to charge interest on the past due balance at the maximum rate allowed by law or eighteen percent (18%) per annum, whichever is less.

In the event of any litigation concerning the Agreement, the prevailing party shall be entitled to attorneys' fees as a part of its damages.

### Advance/Retainer

The Firm's clients are sometimes asked to deposit funds as an advance payment with the Firm. The advance will be deposited in the Firm's client trust account, and the Firm will charge its charges and fees against the advance and credit them on your billing statements. The advance payment will be applied first to payment of charges for such items as photocopying, messengers, travel, etc., as more fully described above, and then to fees for services. In the event such charges and the Firm's fees for services exceed the advance deposited with the Firm, the Firm will bill you for the excess monthly or may request additional advances. Any unused portion of amounts advanced will be refundable to you at the conclusion of the Firm's Engagement. In the alternative, the Firm may require a retainer be deposited in the Firm's client trust account. A retainer will remain on deposit until the end of the Engagement to secure the payment of attorneys' fees and expenses. Despite the payment of a retainer, monthly invoices will be expected to be paid according to the terms of the Engagement.

### Client Documents

All of the Firm's work product in the Engagement will be owned by the Client. At the conclusion of the Engagement, it is your obligation to advise the Firm as to which, if any, of the documents in the Firm's possession, whether received from you or otherwise, that you want returned to you. The Firm may keep copies of such documents at your expense to the extent the Firm deems advisable for its records. If you do not advise the Firm on which documents you want returned at the conclusion of the Engagement, the Firm may return any or all such documents to you at your expense as it deems appropriate. In the event any such documents are not returned to you, then, after destruction of duplicates, the Firm will retain any remaining documents in its files for a period of time deemed appropriate under the law, and ultimately destroy such documents in accordance with its record retention program schedule then in effect, without further notice to you. The Firm reserves the right to destroy documents left in its possession seven (7) years after the Engagement has concluded. If the Firm's representation of you involves

multiple clients, you agree that the delivery of original records, entrusted to the Firm's care, to any one of you will be considered as a delivery to all of you.

### Electronic Mail and Communication

Along with the traditional methods of communication between the Firm and its clients (United States mail, the various private mail services, facsimiles, land-line telephones and cellular telephones), the Firm has electronic mail capability. The Firm recognizes the convenience provided by modern electronic mail and communications. However, with such conveniences come issues related to maintenance of the attorney-client privilege and the confidentiality of communications with you. The Firm presently believes that communication by electronic mail to addresses specifically designated by you have an expectation of privacy that preserves the attorney-client privilege, and it intends to retain and defend the attorney-client privilege with respect thereto. However, the Firm does not encrypt or encode electronic mail, and it is essential that you restrict access to communications received by you from the Firm to yourself in order to preserve the attorney-client privilege.

Unless you otherwise advise the Firm specifically in writing, the Firm will presume that any e-mail address that you provide to it will be an e-mail address that has the appropriate protections to preserve your attorney-client privilege. Unless otherwise specifically instructed by you in writing, execution of this Agreement constitutes authorization by you to communicate with you by electronic mail at any such address. If there are other e-mail addresses that the Firm should use in connection with these communications, or if those e-mail addresses should not be used in connection with all or any particular communications with you, you agree to notify the Firm immediately. Further, absent specific written instruction from you, the Firm will not e-mail credit card numbers, social security numbers, or patent applications. You may instruct the Firm not to e-mail specific information at any time.

Communications to members of the Firm (including its staff) by electronic mail should only be directed to a Firm-designated e-mail address, i.e., name@krcl.com.

Finally, you are advised that the Firm uses currently available commercial virus protection software to reduce the risk of transmitting a virus, worm or Trojan horse to you. However, the Firm specifically and expressly disclaims any liability to you for the transmission of any viruses, worms, Trojan horses or other similar defects with respect to electronic mail communications that may be transmitted by the Firm's electronic mail server.

### Termination or Withdrawal

The Firm's representation of you in connection with the Engagement may be terminated prior to the completion of the Engagement by any party to this Agreement by written notice to the other. The Firm reserves the right to withdraw from its representation of you in the Engagement, if, among other things, you fail to honor the terms of this Agreement, including the timely payment of the Firm's fees, or fail to cooperate or follow the Firm's advice on a material matter, or if any fact or circumstance would, in the Firm's view, render its continuing representation of you unlawful, unethical or ineffective, including the following:

- You fail to cooperate and comply fully with all reasonable requests of the Firm in connection with the Engagement;
- You use the Firm's services to perpetrate a crime or fraud, persist in a course of conduct which the Firm believes is criminal or fraudulent, insist on pursuing an objective which the Firm considers repugnant or imprudent, or pursue an objective with which the Firm fundamentally disagrees;
- You fail to pay fees, expenses or other charges, or the retainer when due as stated in this Agreement; or
- You engage in conduct that renders it unreasonably difficult for the Firm to carry out the purposes of its employment.

No such termination or withdrawal will, however, relieve you of the obligation to pay the legal fees owed to the Firm for services performed and any expenses and other charges owing to the date of termination or withdrawal. In the event of the Firm's withdrawal, the Firm will take reasonable steps to avoid reasonably foreseeable prejudice to your rights, including giving due notice to you, and delivering to you all papers and property to which you are entitled.

### Conflicts

If a controversy or conflict arises between you and any other client of the Firm, the Firm, after taking into account the Disciplinary Rules and any other rules of professional conduct applicable to it under the circumstances, may decline to represent you or such other client, or both you and such other client. If a controversy or conflict arises between you in connection with the Engagement, the Firm after taking into account the Disciplinary Rules and any other rules of professional ethics applicable to it, may decline to continue representing some or all of you under this Agreement.

Further, pursuant to the Disciplinary Rules, the Firm shall be disqualified from representing any other client (i) in any matter which involves a substantially related matter in which your interests are materially and directly adverse to the interests of the other client; (ii) with respect to any matter where there is a reasonable probability that confidential information you have furnished to the Firm could be used to your disadvantage or may be revealed to another person; or (iii) in a litigation matter in which you are also involved and the Firm's representation of you or the other client reasonably appears to be, or may become, adversely limited by the Firm's responsibilities to you, the other person or the Firm's own interests. You understand and agree that, with those exceptions, the Firm is free to represent other clients, including clients whose interests may conflict with you in litigation, business transactions, or other legal matters. You agree that the Firm's representation of you in this matter will not prevent or disqualify the Firm from representing clients adverse to you

CONFIDENTIAL

in other matters for which the Firm does not represent you, so long as (i) the Firm does not violate the above stated exceptions, or (ii) you consent in advance to the Firm undertaking such adverse representations.

### Outcome of Representation

THE FIRM MAKES NO REPRESENTATIONS, PROMISES OR GUARANTEES AS TO THE SUCCESSFUL OUTCOME OF THE MATTERS HANDLED ON YOUR BEHALF IN CONNECTION WITH THE ENGAGEMENT, OTHER THAN TO PROVIDE YOU WITH REASONABLE AND NECESSARY LEGAL SERVICES. THE FIRM ALSO MAKES NO REPRESENTATION CONCERNING ITS ABILITY TO OBTAIN A REIMBURSEMENT TO YOU OF ANY OF THE FEES, COSTS AND/OR EXPENSES INCURRED BY YOU IN CONNECTION WITH THESE MATTERS. ANY AND ALL STATEMENTS OF THIS FIRM EXPRESSED ON THESE MATTERS ARE STATEMENTS OF OPINION ONLY.

### Disputes

In the event of any dispute regarding this Agreement, venue shall be exclusively in either Dallas or Harris County, Texas. However, prior to instituting a lawsuit, the parties agree to mediate the dispute by use of any mediator on the approved-list of mediators in use by the Dallas or Harris County District Courts at that time. The cost of mediation shall be borne equally by the parties.

### Professional Misconduct

THE STATE BAR OF TEXAS INVESTIGATES AND PROSECUTES PROFESSIONAL MISCONDUCT COMMITTED BY TEXAS ATTORNEYS. ALTHOUGH NOT EVERY COMPLAINT AGAINST OR DISPUTE WITH AN ATTORNEY INVOLVES PROFESSIONAL MISCONDUCT, THE STATE BAR'S OFFICE OF GENERAL COUNSEL WILL PROVIDE YOU WITH INFORMATION ABOUT HOW TO FILE A COMPLAINT. YOU MAY CALL 1-800-932-1900 TOLL FREE FOR MORE INFORMATION CONCERNING THIS PROCESS.

### Governing Law

The laws of the State of Texas shall govern the validity, construction, enforcement and interpretation of this Agreement. This Agreement contains the entire agreement between you and the Firm regarding the matters described herein, and the fees, expenses and other charges to be paid relative thereto, and supersedes all prior oral or written agreements in respect thereof. This Agreement may only be amended in writing by you and the Firm. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and together shall constitute the same agreement. Faxes or emailed copies as signed shall constitute originals.

### Lawyer's Creed

The Firm subscribes to and is bound by the terms of the Texas Lawyer's Creed - A Mandate for Professionalism, a copy of which is attached hereto as Schedule "I". The Firm takes its terms very seriously and believes that the successful management of our civil justice system depends upon the proper implementation of the Lawyer's Creed. If you have any questions, comments or concerns with respect to such matters at any time, you agree to inform the Firm immediately with respect to those questions, comments or concerns.

### Notice Pursuant to Texas Government Code Section 81.079

The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with an attorney involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 toll free for more information.

CONFIDENTIAL

## SCHEDULE "I"

THE TEXAS LAWYER'S CREED
A MANDATE FOR PROFESSIONALISM

**Promulgated by**
**The Supreme Court of Texas and the Court of Criminal**
**Appeals**
**November 7, 1989**

I am a lawyer. I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this creed for no other reason than it is right.

---

### I.   OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

1.   I am passionately proud of my profession. Therefore, "My word is my bond."

2.   I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

3.   I commit myself to an adequate and effective pro bono program.

4.   I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed.

5.   I will always be conscious of my duty to the judicial system.

---

### II.   LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

1.   I will advise my client of the contents of this creed when undertaking representation.

2.   I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

3.   I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

4.   I will advise my client that civility and courtesy are expected and are not a sign of weakness.

5.   I will advise my client of proper and expected behavior.

6.   I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

7.   I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

8.   I will advise my client that we will not pursue tactics which are intended primarily for delay.

9.   I will advise my client that we will not pursue any course of action which is without merit.

10.   I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11.   I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

---

### III.   LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct.

1.   I will be courteous, civil, and prompt in oral and written communications.

2.   I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3.   I will identify for other counsel or parties all changes I have made in documents submitted for review.

4.   I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

5.   I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are cancelled.

6.   I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected.

7.   I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

CONFIDENTIAL

8.   I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

9.   I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10.   I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11.   I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12.   I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13.   I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

14.   I will not arbitrarily schedule a deposition, court appearance, or hearing until a good faith effort has been made to schedule it by agreement.

15.   I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

16.   I will refrain from excessive and abusive discovery.

17.   I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

18.   I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19.   I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

---

## IV.   LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1.   I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2.   I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

3.   I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4.   I will be punctual.

5.   I will not engage in any conduct that offends the dignity and decorum of proceedings.

6.   I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7.   I will respect the rulings of the Court.

8.   I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

9.   I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

---

## ORDER OF THE SUPREME COURT OF TEXAS AND THE COURT OF CRIMINAL APPEALS

The conduct of a lawyer should be characterized at all times by honesty, candor, and fairness. In fulfilling his or her primary duty to a client, a lawyer must be ever mindful of the profession's broader duty to the legal system.

The Supreme Court of Texas and the Court of Criminal Appeals are committed to eliminating a practice in our State by a minority of lawyers of abusive tactics which have surfaced in many parts of our country. We believe such tactics are a disservice to our citizens, harmful to clients, and demeaning to our profession.

The abusive tactics range from lack of civility to outright hostility and obstructionism. Such behavior does not serve justice but tends to delay and often deny justice. The lawyers who use abusive tactics instead of being part of the solution have become part of the problem.

The desire for respect and confidence by lawyers from the public should provide the members of our profession with the necessary incentive to attain the highest degree of ethical and professional conduct. These rules are primarily aspirational. Compliance with the rules depends primarily upon understanding and voluntary compliance, secondarily upon re-enforcement by peer pressure and public opinion, and finally when necessary by enforcement by the courts through their inherent powers and rules already in existence.

CONFIDENTIAL

These standards are not a set of rules that lawyers can use and abuse to incite ancillary litigation or arguments over whether or not they have been observed.

We must always be mindful that the practice of law is a profession. As members of a learned art we pursue a common calling in the spirit of public service. We have a proud tradition. Throughout the history of our nation, the members of our citizenry have looked to the ranks of our profession for leadership and guidance. Let us now as a profession each rededicate ourselves to practice law so we can restore public confidence in our profession, faithfully serve our clients, and fulfill our responsibility to the legal system.

The Supreme Court of Texas and the Court of Criminal Appeals hereby promulgate and adopt "The Texas Lawyer's Creed - A Mandate for Professionalism" as attached hereto and made a part hereof.

*In Chambers, this 7th day of November, 1989.*

The Supreme Court of Texas
Thomas R. Phillips, Chief Justice
Franklin S. Spears
C. L. Ray
Raul A. Gonzales
Oscar H. Mauzy
Eugene A. Cook
Jack Hightower
Nathan L. Hecht
Lloyd A. Doggett
Justices

The Court of Criminal Appeals

Michael J. McCormick, Presiding Judge
W. C. Davis
Sam Houston Clinton
Marvin O. Teague
Chuck Miller
Charles F. (Chuck) Campbell
Bill White
M. P. Duncan, III
David A. Berchelmann, Jr.
Judges

CONFIDENTIAL

# EXHIBIT C



**KANE RUSSELL COLEMAN LOGAN**

# Emily Green

ASSOCIATE

Emily Green is an associate with the firm who handles a variety of litigation matters. Her primary focus is on employment matters, such as trade-secrets disputes, non-compete cases, and disputes arising under federal employment law. She also draws on the her past experience working in the banking industry in representing the firm's financial services clients.

Emily obtained her Juris Doctor from Oklahoma City University in 2017. As a law student, she served as Managing Editor of the Oklahoma City Law Review, and held membership in several organizations, including Ruth Bader Ginsburg Inn of Court, American Association for Justice (AAJ), Phi Delta Phi Legal Honors Fraternity, and Black Law Students Association (BLSA). Recently, Emily helped secure a spot for the BLSA Thurgood Marshall Mock Trial Team in the National competition, making history for her law school. Emily was the recipient of numerous scholarships and awards, including The Order of Barristers; the McAfee & Taft Outstanding Trial Advocate Award; the Pro Bono and Public Interest Law Exceptional Service Award, and the Oklahoma City Association of Black Lawyers Scholarship Award.

During law school, Emily completed an externship with the American Civil Liberties Union of Oklahoma, where she assisted with projects relating to the First Amendment, sentencing guidelines, and civil asset forfeitures. She also partook in various summer-associate programs in both Dallas and Oklahoma City, where she gained valuable experience in a variety of legal matters.

Prior to attending law school, Emily received her bachelor's degree in Human Relations from the University of Oklahoma. She worked three years in Human Resources for Chesapeake Energy and four years in banking for J.P. Morgan Chase Bank. While at Chase bank, she obtained her Series 6 and 63 FINRA certifications.

Outside of school and work, Emily has been active in the community with mentoring children and young adults, feeding the homeless, and educating 8th-grade students on the effects of drug and alcohol dependency. Emily also serves on the advisory board for Martha's Heart Ministries—a program designed to help assist women who phase out of foster care.



egreen@krcl.com
DIRECT 214-777-4293
MAIN 214-777-4200
FAX 214-777-4299

Thanksgiving Tower
1601 Elm Street
Suite 3700
Dallas, Texas 75201

LAW SCHOOL

Oklahoma City University School of Law
J.D., *cum laude*, 2017

UNDERGRADUATE

University of Oklahoma
B.A., 2011

## Practice Focus

Litigation, Complex Commercial Litigation, Insurance, Professional Liability, Employment, Financial Services, Bankruptcy, Insolvency & Creditors' Rights, Distressed Assets

## Honors

• The Order of Barristers – Excellence in Trial Advocacy Competition

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

**KANE RUSSELL
COLEMAN LOGAN**

- McAfee & Taft Outstanding Trial Advocate Award
- Pro Bono and Public Interest Law Exceptional Service Award
- Oklahoma City Association of Black Lawyers Scholarship Award

## Admissions

- State Bar of Texas, 2017

  United States District Court of the Northern, Southern, Eastern and Western Districts of Texas

## Publications

- Note, *Finding a Balance Between Hiring Ex-Offenders and Protecting Private Employers in Oklahoma— The Need to Reform the Negligent-Hiring Standard, Enact a Fair-Chance Policy, and Establish a Statutory Presumption Against Negligent Hiring*, 41 OKLA. CITY U. L. REV. 439 (2016).

## Community

- Alpha Kappa Alpha Sorority
- Habitat for Humanities
- Salvation Army
- REACH Ministries
- OU Big Brother/Big Sisters
- Martha's Heart Ministries
- Dare to Hope Mentor Program
- Feed the Homeless (COFC Church)
- Operational Blue-Skyline Urban Ministries
- LEAD

Copyright 2019. All Rights Reserved. Kane Russell Coleman Logan PC

# EXHIBIT D

CONFIDENTIAL

# KANE RUSSELL ◥
# COLEMAN LOGAN

Invoice Date: **12/17/20**          Invoice No.: **458659**          File No.: **71681.00002.000**

**Matthew Otero**

Exxizz Foods, Inc.
713 N. Pearl Street
Rockport, TX 78382

**File Description:  Otero, Sopheak**

## PROFESSIONAL CHARGES

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 11/03/20 | AJ Johnson | TVPA -- Work on response to motion to supplement expert designation (1.5); | 3.00 |
| 11/04/20 | Emily E. Green | TVPA -- Review Plaintiff's Motion to Supplement expert report; summarize analysis. | 1.20 |
| 11/10/20 | AJ Johnson | Work on draft response to motion to supplement by plaintiff. | 4.00 |
| 11/10/20 | Emily E. Green | TVPA -- Assist with response to Plaintiff's motion to supplement expert designation; review case law pertaining to appeals of rulings excluding expert testimony; summarize findings. | 2.40 |
| 11/11/20 | AJ Johnson | Continue work on response to motion to supplement; prepare exhibits; revise and edit the draft response; draft e-mails. | 8.00 |

**Invoice Date: 12/17/20**            **Invoice No.: 458659**            **File No: 71681.00002.000**

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 11/11/20 | Emily E. Green | TVPA -- Research and review federal rules and case law pertaining to entitlement of attorneys' fees due to vexatious litigation; review and revise response to plaintiff's motion to leave to supplement expert. | 3.90 |
| 11/19/20 | Emily E. Green | TVPA – Review plaintiff's reply to response to motion to supplement; briefly discuss same with co-counsel. | 0.70 |
| 11/25/20 | AJ Johnson | Review of court's order on expert; draft several e-mails. | 0.50 |

Remainder of bill redacted as irrelevant to Motion to Compel issues.

**CONFIDENTIAL**